443 A.2d 327

### In the Interest of Treva STOVER.

### Appeal of Treva STOVER.

Superior Court of Pennsylvania.

Submitted Feb. 25, 1981.

Filed March 19, 1982.

---

Dennis C. Pfannenschmidt, Assistant Public Defender, Bellefonte, for appellant.

Charles A. Schneider, Solictor, Bellefonte, for participating party.

Before SPAETH, WIEAND and JOHNSON, JJ.

SPAETH, Judge:

This appeal is from an order recommitting appellant, a mentally retarded woman in her middle 50's, to Laurelton Center for a period not to exceed one year. The appeal was not submitted to us for disposition until after the one year period had expired. The evidence shows that appellant was

properly subject to some form of commitment. It does not show that commitment to Laurelton Center was proper, but since the period of the commitment has expired, as to that we are unable to give any relief. Therefore, to the extent that appellant challenges her commitment, we affirm, but to the extent that she challenges her commitment to Laurelton, we find her appeal moot.

Appellant has been retarded since birth. In the early 1940s her family placed her in the Laurelton State School and Hospital. She remained there until 1962, when she went to live with the Stover family as a housekeeper. After Mr. Stover's wife died, he and appellant were married. They lived together, apparently without incident, until the middle 1970s.

In April 1975 appellant was referred to the Base Service Unit of Centre County by the Pennsylvania State Police, who suspected appellant of having had some part in setting two fires that had occurred in the area. The Base Service Unit determined that appellant did not need its assistance. About a year later appellant was arrested by the State Police on a charge of arson, but the charge was dropped when she was admitted to Hollidaysburg State Hospital. After a brief stay at Hollidaysburg, appellant went to live at the Group Skills Home in State College. While she was there Mr. Stover died. A series of small fires occurred at the Group Home. Appellant was suspected of setting them, and was ordered to undergo a 30 day psychiatric evaluation at Danville State Hospital in December 1976. After her release from Danville, appellant returned to the Group Home, but soon another suspicious fire occurred and she was asked to leave.

From February 1977 until June 1978 appellant lived in a mobile home in State College, and from June 1978 until January 1979 at the Bush House Hotel in Bellefonte. In January 1979, after another suspicious fire, she was involuntarily committed to the Laurelton Center for 90 days under the mental retardation provisions of the Mental Health and Mental Retardation Act of 1966, Act of Oct. 20, 1966, Special

Sess. No. 3, P.L. 96, as amended, 50 P.S. § 4101 *et seq.* After her release from Laurelton, she went to live at the Pine Ridge Manor in Philipsburg. She remained there until the end of October 1979, when she was asked to leave, again because of the occurrence of suspicious fires. On October 31, 1979, the lower court ordered appellant involuntarily committed to Laurelton for 90 days under the 1966 Act, and on February 1, 1980, ordered her recommitted to Laurelton for a period not to exceed one year. This appeal is from the order of February 1, 1980.

Appellant's first argument is that the lower court erred by referring only to the provisions of the Mental Health and Mental Retardation Act of 1966; she maintains that the court should have also referred to the Mental Health Procedures Act, Act of July 9, 1976, P.L. 817, No. 143, 50 P.S. § 7101 *et seq.*, and to the regulations implementing it.

We find no merit in this argument. Section 102 of the Mental Health Procedures Act, 50 P.S. § 7102, declares that mental retardation by itself is not deemed to constitute mental illness. Section 103 of Act, 50 P.S. § 7103, states that the Act applies to the treatment of the mentally ill; this statement is repeated in the regulations, 55 Pa.Code §§ 7100.102, 7100.103(a). Thus, by their own terms, the 1976 Act and its regulations did not apply to appellant.

■ Appellant argues that the provisions of the 1966 Act have been modified as a result of *Goldy v. Beal,* 429 F.Supp. 640 (M.D.Pa.1976). While this is true, appellant has failed to acknowledge the regulations promulgated in response to *Goldy v. Beal, supra.* These regulations were codified at 55 Pa.Code § 7500.1 *et seq.* and were published at 6 Pennsylvania Bulletin 2883–84 (Nov. 13, 1976). Section 7500.4 provides that a person shall be determined to be a mentally retarded person in need of residential placement only upon the following findings:

(1) The person is impaired in adaptive behavior to a significant degree and is functioning at an intellectual level two standard deviation measurements below the

norm as determined by acceptable psychological testing techniques;

(2) The impairment and the resultant disability were manifested before the person's 18th birthday and are likely to continue for an indefinite period; and

(3) The person, because of his retardation presents a substantial risk of physical injury to himself or physical debilitation as demonstrated by behavior within 30 days of the petition which shows that he is unable to provide for, and is not providing for his most basic need for nourishment, personal and medical care, shelter, self-protection and safety and that provision for such needs is not available and cannot be developed or provided in his own home or in his own community without residential placement.

55 Pa.Code § 7500.4.

The evidence before the lower court shows that appellant was such a person. She was therefore properly subject to some form of commitment.

Appellant's second argument is that the evidence fails to show that she was properly recommitted to Laurelton Center as the least restrictive alternative available. She says:

[Appellant] is not arguing that she is fully capable of independent living; all the witnesses agreed that she is not. Nor is she arguing that appellee's evidence of fire setting should be ignored in arriving at a decision in this case. Her position is that before she can be committed to a State Hospital, the Court must consider *all* the relevant factors in her case. Alleged fire setting should be considered, as should her habilitative needs—neither should operate to the exclusion of the other. Her habilitative needs must be met in an environment consistent with the safety of appellant and the public.

It is not an all or nothing proposition, as appellee seeks to make it; certainly a program exists or can be fashioned that meets both of these worthy goals. Unfortunately, in this case we do not know for sure because appellee refused to even try.

Brief for Appellant at 29 (emphasis in original).

■ We agree with appellant that she is entitled to placement in the least restrictive alternative available. This is so as a matter of state law, *In re Schmidt*, 494 Pa. 86, 429 A.2d 631 (1981), without regard to any rights afforded by federal law or the state or federal constitutions. *See Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981).

■ In the opinion filed in support of its order recommitting appellant, the lower court did not dispute appellant's claim that she is entitled to placement in the least restrictive alternative available. Rather, the court found that Laurelton Center was the least restrictive alternative available. The court pointed out that the evidence was that appellant had set fires in every setting she had been placed in other than Laurelton but had not set fires at Laurelton. "Thus," the court concluded, "it is clear that Laurelton is the environment that least infringes on her personal liberty, and is also consonant with her abilities, need for habilitation and treatment." Slip op. 5.

This reasoning assumes that there was no setting that in its degree of restrictiveness was in-between Laurelton and the others in which appellant had been—in other words, a placement not so restrictive as Laurelton but still restrictive enough so that appellant would not set fires. This assumption, however, is not supported by the evidence, which does not show that there was no such in-between placement available to the court. It was, moreover, important to determine whether such an in-between placement was available, for some of the evidence was to the effect that Laurelton was not the proper placement for appellant.

The petition for appellant's recommitment was brought by Mildred Cornelison, the mental retardation coordinator for Centre County. In the petition she listed Dr. Larry Y. Gilfert as the physician most familiar with appellant. In his Certificate of Physician, made part of the petition, Dr. Gilfert stated that in his professional opinion appellant did

not present a substantial risk of physical injury to herself or of debilitation, and did not require residential placement. By way of contrast, the certificate made part of the original commitment petition 90 days earlier had been completed by Dr. Michael R. Bartos, and he had stated that in his professional opinion appellant did pose a substantial risk to herself and did require residential placement.

At the recommitment hearing appellant produced the testimony of Dr. Shelby Powers, superintendent of Laurelton Center, and Sue Frederick, cottage manager of the cottage in which she lived. Both of them testified that Laurelton was not an appropriate placement for appellant because, among other considerations, it was so highly structured that it did not provide her the opportunity to exercise and maintain the independent living skills she did possess. Dr. Bartos did testify in support of appellant's recommitment. However, on cross-examination he indicated that he had never been to Laurelton and that his only recent contact with appellant had been a 20 to 30 minute interview the previous day. Based on that interview and his earlier contacts he submitted some kind of written evaluation to the court, but it was not made part of the record and we have not seen it.

We do not know to what extent the lower court took into account Dr. Gilfert's certificate and the testimony of Dr. Powers and Ms. Frederick, for the court in its opinion did not allude to this evidence.[1] In these circumstances, we should ordinarily remand for further proceedings. Perhaps the court discounted Dr. Gilfert's certificate and the testimony of Dr. Powers and Ms. Frederick; it was not bound to accept the certificate or the testimony. Or perhaps there was no in-between placement available to the court. Re-

1. Appellant has suggested in her brief that the real reason that the Centre County Mental Health/Mental Retardation Unit wanted her in Laurelton Centre was that it was unable or unwilling to pay for her placement in a more appropriate setting outside of Centre County. Brief for Appellant at 28. She supports this claim with copies of various letters. *Id.* Appendix. None of these letters is part of the record. We therefore give them no weight.

mand for findings on these matters, however, would be pointless; since the period of appellant's commitment to Laurelton has expired, it could afford her no relief.[2]

So far as the appeal challenges appellant's recommitment, the order of the lower court is affirmed. So far as the appeal challenges appellant's recommitment to Laurelton Center, the appeal is moot.

2. It is important that cases such as this be handled on an expedited basis. This case is a good example of what happens when that is not done. The lower court's order was dated February 1, 1980. Appellant filed exceptions, which were disposed of by the lower court in July. Appellant did not file her notice of appeal until almost the thirtieth day after the lower court's order was docketed. The record was not filed until October 2, 1980. Appellant's brief was filed November 10 and appellee's December 9, by which time only seven weeks of appellant's period of commitment remained. By the time the case was submitted to this panel for disposition on briefs without oral argument, the period of commitment had expired.

All of our courts, including both the lower court and this court, are overburdened, so that some delay cannot be avoided. However, upon counsel's request for expedited treatment and with the cooperation of the parties, it is possible for a case to be handled very quickly when delay will result in irreparable harm or make relief difficult or impossible. *See, e.g., Westinghouse Air Brake Division, American Standard Inc. v. United Electrical, Radio and Machine Workers of America, Local 610,* 294 Pa. Superior Ct. 407, 440 A.2d 529 (1982); *Commonwealth ex rel. Grimes v. Yack,* 289 Pa. Superior Ct. 495, 433 A.2d 1363 (1981); *K. N. v. Cades,* 288 Pa. Superior Ct. 555, 558 n. 2, 432 A.2d 1010, 1012 n. 2 (1981).