509 A.2d 383

**COMMONWEALTH of Pennsylvania**

v.

**Peter MAGGIO, Appellant. (Two Cases)**

Superior Court of Pennsylvania.

Argued March 18, 1986.

Filed May 14, 1986.

Jon S. Pushinsky, Pittsburgh, for appellant.

Kenneth J. Benson, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before BROSKY, ROWLEY and HESTER, JJ.

HESTER, Judge:

Appellant, facing criminal charges suspended on account of incompetence to stand trial, appeals his mental health commitment pursuant to section 408 of the Mental Health

and Mental Retardation Act of 1966 (hereinafter, "MH/MR Act"), 50 P.S. § 4408, claiming the commitment is unconstitutional under the holding of *Jackson v. Indiana,* 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972). He also argues that the commitment of a mentally retarded person such as him to the forensic unit of Mayview State Hospital, designed for the treatment of the mentally ill, violates not only state law but the United States Constitution as well.

Appellant, now fifty-eight years old, was charged in July, 1980, with arson, aggravated assault and homicide. He was adjudged incompetent to stand trial. Following a series of mental health commitments which were not challenged, on October 24, 1983, appellant was committed to the forensic unit of Mayview State Hospital pursuant to section 408 of the MH/MR Act, 50 P.S. § 4408. The commitment was based on the fact that appellant was not diagnosed as being mentally ill but was suffering from mental retardation. The Mayview facility was selected because there were "no secure, or forensic, mental retardation facilities in the Commonwealth of Pennsylvania." *Commonwealth v. Maggio,* 132 P.L.J. 147, 148 (1983). In light of the crimes charged to appellant, the court deemed him a threat to the health and safety of the citizens of the Commonwealth, necessitating commitment to a secure facility such as the one selected. *Id.* at 149.

The order of October 24, 1983, was appealed to this court (hereinafter, "the 1983 appeal"), raising the same two issues we face in this appeal. Appellant claimed that his commitment violated *Jackson v. Indiana, supra,* due to the fact that he had been diagnosed as unlikely ever to achieve competence to stand trial. *Jackson* held that one

> who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required

to commit indefinitely any other citizen, or release the defendant.

406 U.S. at 738, 92 S.Ct. at 1858, 32 L.Ed.2d at 451. Appellant argues that his commitment under section 408, a criminal commitment under the MH/MR Act, was a denial of due process and equal protection under the holding of *Jackson*.

This court remanded for a full hearing on the *Jackson* question, for it had not been addressed by the trial court and the record was inadequate to decide the issue. We did not, in deciding the 1983 appeal, rule on appellant's second argument, for if he were to prevail on the *Jackson* issue, the propriety of his place of commitment would become moot. We retained jurisdiction to review the proceedings following remand.

The *Jackson* hearing was held on November 29, 1984. Based on the testimony of appellant's treating psychiatrist, appellant was determined to be suffering from mental illness. The court held that the condition justified commitment under section 301 of the Mental Health Procedures Act of 1976 (hereinafter, "MHPA"), 50 P.S. § 7301. In applying the holding of *Jackson*, the court concluded that it was not applicable, for appellant was not "detained on a criminal charge[ ] solely because of incompetency to proceed," which was the defect in *Jackson*. Slip op., May 16, 1985, at 6. The court held that appellant was civilly committed due to his mental illness under § 301 of the MHPA, the standard applicable to involuntary commitment of all persons rather than only to those who face criminal charges. *Id.* The court denied appellant's *Jackson* challenge and held that appellant's commitment was proper, *id.* at 7, and entered an order to that effect on June 19, 1985.

Appellant appealed the order of June 19, 1985 (hereinafter, "the 1985 appeal"), again raising the *Jackson* issue. He is supported by the Commonwealth of Pennsylvania, Department of Public Welfare (hereinafter, "DPW"). The 1985 appeal has been consolidated with the 1983 appeal, so

the issue reserved in the earlier appeal is presently pending our review.

Appellant's counsel has ably presented appellant's challenge to the trial court's resolution of the *Jackson* issue. The challenge implicitly rests on the proposition that the trial court, pursuant to the directive of this court following the 1983 appeal, had authority only to consider the applicability of *Jackson* to the § 408 commitment under which appellant was confined at the time of the prior appeal. The DPW strongly agrees. The Department argues: "Since the October 24, 1983 § 408 commitment order, Maggio has never had a civil commitment hearing, and thus is not currently detained pursuant to a civil commitment." Brief at 2. The point of the argument is that we are reviewing the propriety of a § 408 commitment under the MH/MR Act, *not* a commitment under the MHPA.

Based on that premise, the argument is simple. When appellant was committed under section 408 of the MH/MR Act on October 24, 1983, he was not mentally ill, but mentally retarded. *Commonwealth v. McQuaide*, 464 Pa. 499, 347 A.2d 465 (1975), interpreted the MH/MR Act in light of *Jackson* and held that if an incompetent criminal defendant is unlikely to regain his competency within a reasonable time, he "must either be committed under the civil commitment provisions of Section 406 [50 P.S. § 4406] or be released." *Id.*, 464 Pa. at 518, 347 A.2d at 475. *See Commonwealth v. McBurse*, 465 Pa. 198, 348 A.2d 423 (1975), to the same effect. Appellant is entitled to release under the foregoing standard; he would then be subject to civil commitment proceedings wherein evidence of current mental illness would be relevant. Brief for appellant at 14.

The Commonwealth's response is that the *Jackson* hearing of November 29, 1984, did not exceed the scope of the Superior Court's remand order of October 26, 1984. Proof at the hearing that appellant was currently mentally ill and therefore committable under the MHPA obviated the applicability of *Jackson*, whose strictures apply only when someone is detained *solely* on the basis of incompetency to stand

trial. Resolution of the issue requires an analysis of the relationship between the MH/MR Act and the MHPA.

The MH/MR Act was adopted in 1966 to regulate the treatment of all mentally disabled persons, defined to include both the mentally retarded and the mentally ill. 50 P.S. §§ 4201, 4102. Following the Supreme Court's 1972 constitutional exposition of the rights of mental health patients in *Jackson v. Indiana, supra,* applied to the Pennsylvania MH/MR Act by the Pennsylvania Supreme Court in 1975, *Commonwealth v. McQuaid, supra,* the state legislature adopted the MHPA in 1976 specifically in response to the *Jackson* and *McQuaid* decisions. *Commonwealth v. Kerrigan,* 271 Pa.Super. 404, 409 n. 3, 413 A.2d 729, 731 n. 3 (1979).[1] The MHPA repealed the MH/MR Act definition of "mental disability" which had included mental illness, and limited the application of the MH/MR Act to mentally retarded persons. 50 P.S. § 7502(a). The MHPA established exclusive and comprehensive procedures for commitment and treatment of the mentally ill. 50 P.S. § 7102. Mutually exclusive definitions of mental illness and mental retardation result in the application of one act or the other in a given case, but never both acts to the same set of circumstances.

Appellant's condition, unfortunately, has alternated during the last five years between mental retardation and mental illness, justifying alternating application of the two mental health acts to his case. The problem arose in appellant's case because his *Jackson* hearing was scheduled pursuant to the order of this court; it was not initiated by petition. Normally, of course, the petitioner for a commitment knows what proof will be offered, files a petition

1. The MHPA was also enacted partially in response to the federal district court decision in *Goldy v. Beal,* 429 F.Supp. 640 (E.D.Pa.1976), which declared the basic commitment section of the MH/MR Act, 50 P.S. § 4406, to be unconstitutionally vague due to its circular definition of mental illness. *Goldy* also resulted in the promulgation of new regulations applicable to the MH/MR Act, codified at 55 Pa.Code § 7500.1 *et seq.,* and published at 6 Pa.Bull. 2883–84 (November 13, 1976). *Interest of Stover,* 297 Pa.Super. 116, 119, 443 A.2d 327, 328 (1982).

under the appropriate act, and follows the procedures prescribed by whichever act applies.

■ As a consequence of failure to file a new petition following remand, substantive portions of the MHPA were utilized in a case procedurally subject to the MH/MR Act. Substantial rights of appellant were violated when the trial court substituted § 304 of the MHPA as the predicate for commitment in place of § 408 of the MH/MR Act without affording appellant all the procedural protections of the MHPA. As we noted earlier, the MHPA was enacted to remedy defects in Pennsylvania's mental health laws in light of *Jackson v. Indiana, supra.* Many of the changes incorporated in the MHPA are procedural ones, designed to protect due process and equal protection rights of individuals subject to commitment proceedings. We are constrained to hold that the trial court inadvertently erred in ordering appellant's commitment under the MHPA without following the procedures mandated by the act.

Appellant received no notice of the hearing, nor was he served with a petition, with the result that he had no opportunity to prepare a defense. These are not minor "technical" defects. Counsel for appellant understood that the purpose of the hearing was to determine whether appellant was likely to regain competency to stand trial within a reasonable time. N.T., November 29, 1984, at 4. Only two witnesses testified at the hearing: Doctors Martone and Bowman, both psychiatrists. Counsel for appellant called the former, who had examined appellant for approximately an hour to evaluate his competency to stand trial. She testified that appellant was incompetent and that she believed he would never regain competency, due to his mild to moderate mental retardation. *Id.* at 12–13, 16, 18. She testified further that during the interview, appellant demonstrated no signs of psychosis, *id.* at 21–22, and, over appellant's objection, that he was dangerous to himself and others. *Id.* at 23.

The Commonwealth called Dr. Bowman, appellant's treating physician at the Mayview State Hospital forensic unit. He testified that appellant was both mentally retarded and

mentally ill. *Id.* at 28–29. The mental illness was specified to be a major depressive disorder which was intermittently in remission. *Id.* at 29. He too concluded that appellant was incompetent to stand trial, *id.* at 31, and testified that he "would be astounded if he recovered competency at any time in [the next] ten years." *Id.* at 32. He concluded also that appellant was dangerous to himself and others, *id.* at 33, and recommended treatment in a secure mental retardation facility rather than the Mayview forensic unit. *Id.* at 38.

Had appellant's counsel been aware that the court might order a civil commitment under the MHPA, he could have utilized the services of a psychiatrist to assist appellant and to testify on his behalf, available at state expense pursuant to § 304(d) of the MHPA. As it was, counsel relied on the testimony of Dr. Martone, employed by the county behavior clinic, who examined appellant only in regard to his competency to stand trial. If appellant had been afforded the procedural protections of the MHPA prior to the hearing, evidence at the hearing might thus have included additional testimony, might have resulted in different findings of fact, might have resulted in continued application of the MH/MR Act rather than the MHPA and might have warranted commitment to a less restrictive facility.

On remand, therefore, appellant will be entitled to a new commitment hearing based on a new petition and appropriate notice under the applicable statute in order to permit preparation of a proper defense.

Our review of the second issue provides additional, highly compelling support for our disposition of this case. Appellant argued in his 1983 appeal, when he was committed on a finding of mental retardation, that his detention in the forensic unit of Mayview State Hospital, a high-security facility designed for the care and treatment of the mentally ill, violated constitutional and statutory rights. The record contained evidence that his confinement with the mentally ill posed a serious risk to appellant's health. Although this was recognized by the trial judge, he deemed appellant's danger to the public to outweigh the risk to appellant's

health, for the state had no "appropriate secure facility to house mentally retarded individuals charged with committing a crime." *Maggio, supra,* 132 P.L.J. at 149.

Appellant's counsel now argues forcefully that appellant's detention in the inappropriate facility caused the "predictable" result that appellant's condition deteriorated to a state of mental illness by the time of the *Jackson* hearing in November, 1984. Brief for Appellant at 14–15. Psychiatrist Duncan Campbell had testified in 1983 that

it is detrimental to their [the mentally retarded] well-being to be involved in situations where people are mentally disturbed. I don't think that they can cope with this well and I think that it causes them very much turmoil. It certainly doesn't allow them the capacity to develop skills that might be present but perhaps not tapped at that point. So, yes, I think that it is ... detrimental for a person mentally retarded to be involved with the mentally ill daily, regularly.

N.T., August 18, 1983, at 23. Nothing in the record supports appellant's conclusion that his detention in the Mayview forensic unit actually caused the condition of mental illness testified to by Doctor Bowman at the November, 1984 hearing, yet the possibility cannot be denied.

�as We hold that it was error to commit appellant, suffering only from mental retardation, to the Mayview forensic unit, designed and equipped for the treatment of the mentally ill. The risk to the mental health of such an individual does not comport with constitutional and statutory standards for the proper treatment of the mentally retarded. Such a person is entitled to treatment in a facility where his health is not endangered by involvement with the mentally ill.

▰ Yet the Commonwealth has not provided a secure facility for the treatment of dangerous mentally retarded persons. We fully appreciate the trial court's appropriate concern for the public interest in protection from a person who would undeniably pose a threat were he free in the community. The Commonwealth must, however, provide a

secure facility for the treatment of dangerous mentally retarded individuals, or it must pay for their treatment in an appropriate facility outside the Commonwealth.[2]

We have discussed the threat to appellant's health which was created by his commitment to a facility for the mentally ill when he was suffering only from mental retardation. As the Supreme Court held in a case challenging conditions in an institution for the mentally retarded, *Youngberg v. Romeo*, 457 U.S. 307, 316, 102 S.Ct. 2452, 2458, 73 L.Ed.2d 28, 37 (1982), it is "unconstitutional to confine the involuntarily committed—who may not be punished at all—in unsafe conditions." The Supreme Court held that Romeo was entitled to safe conditions of confinement, freedom from bodily restraints and training or habilitation[3] at least sufficient to ensure safety and freedom from undue restraint. *Id.* at 316–19, 102 S.Ct. at 2458–60, 73 L.Ed.2d at 37–39.

■■■■ Consistent with this holding is the constitutional "requirement that the least restriction consistent with adequate treatment and required care shall be employed," as mandated by the Pennsylvania Supreme Court in *In re Schmidt*, 494 Pa. 86, 96, 429 A.2d 631, 636 (1981). This court has followed the foregoing cases in *Interest of Stover*, 297 Pa.Super. 116, 120–21, 443 A.2d 327, 329 (1982):

Alleged fire setting should be considered, as should her habilitative needs—neither should operate to the exclusion of the other. Her habilitative needs must be met in

2. At the time of appellant's 1983 commitment, he was the only resident of the Mayview forensic unit who was not suffering from mental illness. N.T., August 18, 1983, at 9. The record contains no further information as to the number of individuals in the state who are in the same category as appellant.

Sections 503, 508 and 509 of the MH/MR Act, 50 P.S. §§ 4503, 4508 and 4509, establish the financial obligations of the county and the Commonwealth to assure the availability of services under the MH/MR Act.

3. "Habilitation" is commonly used to refer to programs for the mentally retarded because mental retardation is a learning disability and training impairment rather than an illness. The principal focus of habilitation is upon training and development of needed skills. *Youngberg v. Romeo, supra*, 457 U.S. at 309 n. 1, 102 S.Ct. at 2454 n. 1, 73 L.Ed.2d at 33 n. 1.

an environment consistent with the safety of appellant and the public.

. . . .

We agree with appellant that she is entitled to placement in the least restrictive alternative available. Statutory law likewise establishes the right to *adequate* treatment, defined as that "needed to alleviate pain and distress and to facilitate the recovery of a person from mental illness." 50 P.S. §§ 4201(1), 7102, 7103, 7104.

In keeping with the foregoing discussion, we remand for further proceedings. The Commonwealth must either release appellant or institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen. Appellant is entitled to the procedures mandated by Pennsylvania mental health laws, specifically to notice and a petition which will enable him to prepare a defense, and to treatment in a facility, within or without the boundaries of the Commonwealth of Pennsylvania, which will not pose a threat to his mental health and thus affords him the adequate treatment required by the United States Constitution and the laws of this Commonwealth. Jurisdiction is relinquished.