328

## In Re Michael Pope

*Sharon M. Profeta,* for respondent.
*James A. Esler,* for petitioner.
*Edward P. Carey,* for Commonwealth.

SCHWARTZ, *J.*, May 11, 1981—On April 21, 1981, Allegheny County Mental Health/Mental Retardation Program filed a petition for Civil Court Commitment under section 406 of the Mental Health and Mental Retardation Act of 1966, wherein it requested that the court direct the treating physician of Michael Pope to examine him for the purpose of determining at a hearing whether the court should order the commitment of Mr. Pope for further care and treatment or whether some other appropriate action should be taken consistent with the provisions of the act. The court ordered the requested examination and that a hearing be held

May 11, 1981. At that time, there appeared Dr. Vitasta B. Sehgol, a physician trained in the specialty of psychiatry; Dr. Marvin DeWayne Wheeler, a Ph.D. from the University of Pittsburgh, specializing in rehabilitation psychology; Mary Ann Pope, mother of respondent; Roosevelt Bryant, a placement specialist employed by the Association for Retarded Citizens of Allegheny County and the Director of the Residential Advocacy Program; and Rudy DeMarco, a caseworker in the Social Services Department of Western Center.

The issue before the court is whether or not the testimony elicited at the May 11, 1981 hearing was sufficient to justify the commitment of Mr. Pope to the state operated facility at the Western State Center at Canonsburg pursuant to section 406 of the Mental Health and Mental Retardation Act of 1966.

On May 11, 1981, the court made the following finding:

Michael Pope is mentally retarded, suffers from severe obesity and his weight poses an unquestioned danger to his health and could be fatal. While living with his parents, it has been impossible to control Michael Pope's weight.

The court then ordered the commitment of respondent as aforesaid. This opinion is rendered pursuant to Pa.R.A.P. § 1925(a).

In order to justify a civil court commitment under 50 P.S. § 4406, petitioner must prove by clear and convincing evidence (Addington v. Texas, 441 U.S. 418 (1979)) that a person is mentally disabled and in need of care or treatment by reason of such disability.

50 P.S. 4102 sets forth the following definitions:

"Mental disability means any mental illness, mental impairment, mental retardation or mental

deficiency which so lessens the capacity of a person to use his customary self control, judgment and discretion in the conduct of his affairs and social relations as to make it necessary for him to be under care as provided in this Act.

"Mental retardation means subaverage general intellectual functioning which originates during the developmental period and is associated with impairment of one or more of the following: (1) maturation, (2) learning and (3) social adjustment."

In Goldy v. Beal, 429 F. Supp. 640 (M.D. Pa 1976), section 406 of the Mental Health Act was declared unconstitutional. The district court, however, has permitted commitments pursuant to section 406 if the standards set forth in Goldy are adhered to. Those standards have become incorporated in the statute and are published in the Pennsylvania Bulletin at 6 Pa. Bul. 2883, November 13, 1976, wherein it states:

"A person shall be determined a mentally retarded person in need of residential placement only upon the following findings:

"1. The person is impaired in adapted behavior to a significant degree and is functioning at an intellectual level two standard deviation measurements below the norm as determined by acceptable psychological testing techniques.

"2. The impairment and the resultant disability were manifested before the person's eighteenth birthday and are likely to continue for an indefinite period; and

"3. The person, because of his retardation, presents a substantial risk of physical injury to himself or physical debilitation as demonstrated by behavior within thirty days of the Petition which shows

that he is unable to provide for, and is not providing for his most basic need for nourishment, personal and medical care, shelter, self-protection, and safety, and that the provision for such needs is not available and cannot be developed or provided in his own home or in his own community without residential placement."

Dr. Vitasta Sehgol testified that Mr. Pope meets the first criteria of the Goldy standard in that his adaptive behavior is impaired to a significant degree and that he is functioning at an intellectual level two standard deviation measurements below the norm. This finding is confirmed by Dr. Wheeler. Dr. Sehgol further confirmed that the second prong was met insofar as the impairment and the resultant disability manifest themselves before his 18th birthday and is likely to continue for an indefinite period. Dr. Wheeler confirms compliance with this prong of the Goldy standard as well. The Commonwealth, in its brief, concedes that the first two parts of the three-part Goldy standard have been met. Thus, the issue in the case, sub judice, is reduced to whether or not the third prong of the Goldy standard has been satisfied.

The third part of that standard reproduced, supra, may be broken down into two parts and the court shall examine them seriatim. First, does Mr. Pope because of his retardation, present a substantial risk of physical injury to himself or physical debilitation as demonstrated by his behavior within 30 days of the petition, which shows that he is unable to provide for his most basic need for nourishment, personal medical care, shelter, self-protection and safety.

Dr. Sehgol and Dr. Wheeler agree that Michael Pope is retarded. It is also not disputed that he is

obese. Dr. Sehgol testified: "I think nourishment, whether you feed yourself or overfeed yourself or not feed at all, I think both are abnormal and I think Michael has no control on his eating and that is one of his biggest problems."

Furthermore, Dr. Sehgol testified that because of Mr. Pope's retardation he presents a substantial risk of physical injury to himself. Mrs. Pope testified that at the time of the hearing, he was residing at her home with her and that his problems were related to food.

The court finds that Michael Pope's obesity and inability to control his eating present a clear and present danger to himself. The court further finds, based upon Mrs. Pope's testimony, that up to the date of the hearing, this problem has continued. The risk of injury, therefore, has been demonstrated within 30 days of the hearing and is likely to continue for an indefinite period. While the Commonwealth argues that respondent's obesity is a physical problem, the court finds that Mr. Pope, because of his mental retardation, is unable to control his eating habits and make a decision or exercise the appropriate judgment to control the problem. Accordingly, the court holds that the first half of the third criteria under Goldy v. Beal, supra, has been met.

The second portion of the third criteria under Goldy v. Beal, supra, requires that before commitment may be ordered, the court must find that provision for respondent's basic needs of nourishment, personal and medical care, shelter, self-protection and safety, cannot be developed or provided in his own home or in his own community without residential placement. Mrs. Pope testified that she cannot control respondent at home. She also testified that her son stayed at a facility known as

Horizon Home operated by Duquesne University, at which time he shed 20 pounds. That program, however, lasted for only one month and respondent was discharged. When he returned home, thereafter, he regained the weight. He also spent three months at Crippled Children's Home, after which he was discharged and the reasons therefor do not appear of record.

The Commonwealth has forcefully argued that this respondent is more appropriately placed in a community living arrangement rather than a state facility. In response, the county called Roosevelt Bryant, who testified that he is the Director of Residential Advocacy for the Association of Retarded Citizens of Allegheny County with a primary responsibility in assisting in placing retarded citizens in a community living arrangement. Mr. Bryant testified that to his knowledge, there are no facilities to address Mr. Pope's problem and no testimony was introduced to the contrary. In In Re Joseph Schmidt, 494 Pa. 86, 429 A. 2d 631 (1979), the Supreme Court held that it was the county's responsibility to arrange for appropriate treatment in the least restrictive setting utilizing a plan tailored for the individual.

The court finds, however, that there exists no facility available to respondent for the treatment of his specific problem. At the present time, no less restrictive alternative is known to the court. There is no question that Mr. Pope is in need of care. While we agree with the Commonwealth that the county should develop and create a living arrangement that will provide 24 hour supervision and attendant medical services for this respondent, we cannot return this respondent to his home, and no appropriate community living arrangement facility exists. Accordingly, this court has found and ordered that:

1.  Michael Pope be temporarily confined to the Western State Center at Canonsburg, a facility of the Commonwealth of Pennsylvania;

2.  That Michael Pope is mentally retarded suffers from severe obesity and his weight poses an unquestioned danger to his health and could be fatal. While living with his parents, it has been impossible to control Michael Pope's weight;

3.  Petitioner, Allegheny County Mental Health/Mental Retardation Program, is directed to act in good faith to make every attempt to create a living arrangement that will provide 24 hour supervision and attendant medical services for respondent as soon as practicable;

4.  That the Director of Western State Center at Canonsburg is to report to the court and to counsel on a monthly basis as to respondent's progress beginning 60 days from the date of this order;

5.  That the Director of Allegheny County Mental Health/Mental Retardation Program is directed to report to the court on a monthly basis beginning 30 days from the date with reference to its compliance with this order and on all attempts to locate and create an appropriate placement for respondent. The court has filed this order and findings on May 11, 1981.