430 A.2d 1160

**COMMONWEALTH of Pennsylvania**

v.

**Christian HUBERT, Appellant.**

Supreme Court of Pennsylvania.

Argued April 29, 1981.

Decided July 2, 1981.

* This case was assigned to the writer on March 2, 1981.

Andrew F. Schneider, Stuart Wilder, Asst. Public Defenders, Doylestown, Bucks County, for appellant.

Dolores Robinson, Bucks County Mental Health, Andrea C. Jacobsen, Allen C. Warshaw, Deputy Attys. Gen., for appellee.

## OPINION OF THE COURT

FLAHERTY, Justice.

On December 2, 1977, in the Court of Common Pleas of Bucks County, the appellant, Christian Hubert, was ordered

to be committed to a state mental institution for a period not to exceed thirty days. A temporary stay order was granted by the Superior Court, and, upon appeal to that court, the commitment order was affirmed.[1] A petition for allowance of appeal to this Court was then granted. In the instant appeal, no appearance was entered, and no brief was submitted, on behalf of the Commonwealth.[2]

Appellant contends that the evidence adduced at the commitment proceeding was insufficient to warrant commitment under the Mental Health Procedures Act.[3] At the time of the commitment hearing, appellant was a sixteen year old juvenile delinquent being held in custody at a juvenile detention center. Commitment proceedings were commenced following an incident in which appellant threatened a child care worker at the detention center.

At the hearing, a child care worker testified that the incident in question occurred when appellant requested that a window be closed in his room. One worker entered the room and proceeded to unlock a metal screen covering the window while another worker waited in the doorway. Appellant, while standing approximately five feet from the worker who was closing the window, picked up a three foot long exercise bar made of steel, rubber, and plastic. He held it over his shoulder as though it were a baseball bat and said, "Now I will take the keys." The threatened worker then immediately approached the appellant, whereupon the latter dropped the exercise bar to the floor in a corner of the room and attempted to block the worker from taking possession of it. The exercise bar was, nevertheless, removed from

1. *Commonwealth v. Hubert*, 260 Pa.Super. 588, 394 A.2d 610 (1978).

2. The Commonwealth has advised this Court that it supports the appellant in this case because the county mental health officials who initiated the commitment proceedings in the name of the Commonwealth believe that the court below erred in ordering that appellant be committed.

3. Act of July 9, 1976, P.L. 817 § 101 et seq., 50 P.S. §§ 7101 et seq. (Supp.1977–1978).

the room; thereupon, appellant, finding himself locked into his room, said that he had merely been kidding.

The only witness to testify for the Commonwealth about appellant's mental condition was a psychiatrist who expressed concern that such conduct *could* be repeated, but declined to offer any opinion as to whether a reasonable probability existed that such behavior *would* recur. He testified that he was unable to explain the cause of appellant's behavior, or even to attribute it to mental illness, since he had had only a brief time to perform a psychiatric evaluation. Indeed, the psychiatrist testified that he had formed no diagnosis respecting appellant's mental condition, that he could not even comment on whether the behavior resulted from a mental condition or from other causes, and that he could not state whether appellant was unable to exercise self-control. The psychiatrist recommended only that a much more complete psychiatric evaluation be performed; furthermore, he stated that treatment could not even be discussed without first performing further diagnostic tests.

The Mental Health Procedures Act subjects to involuntary emergency examination and treatment persons who are "severely mentally disabled and in need of immediate treatment .... " 50 P.S. § 7301(a). The Act provides that a person will be deemed severely mentally disabled "when, *as a result of mental illness,* his capacity to exercise self-control, judgment and discretion in the conduct of his affairs and social relations or to care for his own personal needs is so lessened that he poses a clear and present danger of harm to others or to himself." (Emphasis added.) 50 P.S. § 7301(a). One who is mentally ill will be regarded as a clear and present danger to others when it is established that "within the past 30 days the person has inflicted or attempted to inflict serious bodily harm on another and that there is a reasonable probability that such conduct will be repeated." 50 P.S. § 7301(b)(1). The petition to commit

appellant was filed pursuant to 50 P.S. § 7304(c), alleging that appellant presented a danger of harm to others. To sustain a court-ordered commitment of one who poses such a danger, *clear and convincing* evidence must support a finding that the person is (1) severely mentally disabled, (2) in need of immediate treatment, and (3) a clear and present danger to others. 50 P.S. § 7304(f).

Evaluated by these standards, the evidence presented at the commitment hearing was clearly inadequate to sustain a court-ordered involuntary treatment.[4] The incident to which the child care worker testified was insufficient, in itself, to clearly and convincingly demonstrate that appellant is mentally ill. Appellant's actions during the incident were entirely consistent with his being a juvenile delinquent, but a juvenile delinquent is not per se mentally ill for purposes of the Mental Health Procedures Act. The presence of mental illness cannot necessarily be inferred from the fact that the person acted tortiously, criminally, or in a manner displaying delinquency. The primary intendment of the Mental Health Procedures Act was not to provide a remedy or punishment for such conduct, but rather to make "involuntary treatment available where the need is great and its absence could result in serious bodily harm to the mentally ill person or to others." 50 P.S. § 7102. Hence, the fundamental inquiry must be, ab initio, whether mental illness is present.

Certainly, there may be circumstances where the character of a person's acts is indicative of mental illness, but the act described by the child care worker did not adequately reflect such an illness. The only other evidence presented by the Commonwealth was the testimony of a psychiatrist. That testimony, however, provided no basis for the court

---

4. In view of our disposition of this case on the sufficiency of evidence issue, we need not address appellant's additional contentions that (1) the petition for commitment failed to satisfy the requirements of 50 P.S. § 7304(c)(2), and (2) inadequate consideration was accorded to less restrictive treatment alternatives under 50 P.S. § 7304(f).

below to conclude that appellant was afflicted with a mental illness, since the psychiatrist repeatedly expressed a lack of any opinion as to appellant's condition. Inasmuch as the evidence was insufficient to establish the prerequisite presence of mental illness in appellant, there is no cause to address the additional statutory requirements that there be a need for treatment and a clear and present danger to justify commitment.

The legislative policy reflected in the Mental Health Procedures Act is to require that strict conditions be satisfied before a court order for commitment shall be issued. This policy may occasionally result in the release of persons who *may* be mentally ill. Yet the statutory provision in question authorizes involuntary treatment only for those who *are* mentally ill. Such a policy is in accord with the recognition that commitment entails a massive deprivation of liberty. Collateral consequences, too, may result from the stigma of having been adjudged mentally ill. The fact that appellant was already being held in custody in a juvenile detention center, and faced transfer to a mental institution, did not diminish the seriousness of the commitment proceeding. Numerous restrictions and routines are imposed in a mental hospital which differ significantly from those in a detention center. Since these restrictions are designed to aid and protect the mentally ill, persons, even those already in custody for other reasons, who do not need such treatment should not be subjected to it. Indeed, a person who is mistakenly committed to a mental hospital might suffer serious psychological damage. For these reasons, strict adherence to the statutory requirements is to be compelled.

Order reversed.

O'BRIEN, C. J., did not participate in the consideration or decision of this case.

LARSEN, J., dissents.