452 A.2d 1372

**COMMONWEALTH of Pennsylvania**

v.

**C.B., Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 1, 1980.

Filed Nov. 30, 1982.

Robert J. O'Shea, Jr., Assistant Public Defender, Norristown, for appellant.

Richard Faux, Assistant County Solicitor, Norristown, for participating party.

Before PRICE, WATKINS and MONTGOMERY, JJ.

PRICE, Judge:

■ Appellant challenges the legality of his 90 day involuntary commitment to Norristown State Hospital. On November 9, 1979, appellant voluntarily committed himself to the state hospital. Upon his admission, he executed an agreement providing that should he elect to withdraw from treatment, his release could be delayed for up to 72 hours.[1] On January 2, 1980, he notified the hospital authorities that he wished to be discharged. One day later, on January 3, 1980, the hospital filed a petition requesting the Court of Common Pleas of Montgomery County to enter an order for

1. This type of agreement is authorized by 50 P.S. § 7203, entitled "Explanation and Consent".

appellant's involuntary treatment for 90 days, pursuant to § 304 of the Mental Health Procedures Act ("Act").[2] A hearing before a mental health review officer was scheduled for January 4, 1980, prior to the expiration of the 72 hour period during which his release was delayed. Thus, the petition was not served on appellant until the day before the hearing. The hearing was held as scheduled and appellant was committed for 90 days. Appellant requested that a judge of the Court of Common Pleas review the order for his involuntary treatment. The commitment was affirmed, and this appeal taken. Appellant asserts that the procedure approved by the court below abridged his rights under the Act and deprived him of liberty and property without due process of law, in violation of the Constitution of the United States. We agree with appellant that he was not afforded his rights under the Act, and thus we need not address the merits of his Fourteenth Amendment claim.[3]

Section 304(c) of the Act provides for procedures to be followed in initiating court-ordered involuntary treatment for persons not already in involuntary treatment, and requires in relevant part that

... A copy of the petition shall be served on such person at least three days before the hearing together with notice

**2.** 50 P.S. § 7304.

**3.** The court below was of the opinion that, as appellee argues here, this appeal is moot, because appellant's 90 day commitment is no longer in effect. As the order of involuntary commitment affects an important liberty interest, and because by their nature most involuntary commitment orders expire before appellate review is possible, this appeal is not moot. *Commonwealth v. Blaker,* 293 Pa.Superior Ct. 391, 446 A.2d 976 (1981); *In Re S.C.,* 280 Pa.Superior Ct. 539, 421 A.2d 853 (1980); *In Re Ann S.,* 279 Pa.Superior Ct. 618, 421 A.2d 370 (1980); *Commonwealth ex rel. Bielat v. Bielat,* 257 Pa.Superior Ct. 446, 390 A.2d 1321 (1978).

In maintaining that the appeal is moot, appellee also argues that since appellant initially committed himself voluntarily, no significant additional stigma was created when he was involuntarily committed for 90 days. This court has rejected the argument that the degree of stigma associated with a particular commitment should be evaluated in deciding whether the discharge of the committed party has made moot the question of the legality of the commitment. *In Re S.C.,* 280 Pa.Superior Ct. 539, 421 A.2d 853 (1980).

advising him that an attorney has been appointed who shall represent him unless he obtains an attorney himself, that he has a right to be assisted in the proceedings by an expert in the field of mental health, and that he may request or be made subject to psychiatric examination under subsection (c)(5).

50 P.S. § 7304(c)(4). It is undisputed that appellant was not served with the petition until the day before his hearing. The court below concluded, however, that for the purposes of the notice requirements of the Act, a voluntary patient who has elected to terminate treatment and is being held for 72 hours is, during this 72 hour period, an *involuntary* patient, and thus subject to the "reasonable notice" requirement of § 304(b)(3),[4] rather than the three day notice specified by § 304(c)(4). The court found 24 hours notice to be reasonable under the circumstances, and sustained the commitment. Slip op. at 4. We cannot agree with this interpretation of the statutory language.

Section 304(b) of the Act clearly applies only to "persons already subject to treatment under sections 303, 304, and 305" of the Act, and therefore was not appropriately invoked in this case. The court below resorted to § 304(b) to resolve a dilemma it perceived was presented by appellant's situation. The court was concerned that § 206(a)[5] of the Act, covering withdrawal from voluntary treatment, provides for only 72 hours of delayed release when a patient committed voluntarily gives notice of intent to withdraw from treatment. Therefore, an individual detained under § 206(a) alone would inevitably be released before the expiration of the three day period prior to hearing, given that some time must be consumed in the preparation of a petition.

This dilemma is illusory, however, because of another option available to the hospital under the Act. Section 302[6]

4. 50 P.S. § 7304(b)(3).

5. 50 P.S. § 7206(a).

6. 50 P.S. § 7302.

provides for involuntary emergency treatment not to exceed 120 hours, and § 303[7] for extended emergency treatment after an informal conference before a review officer or judge, not to exceed twenty days. If convinced that appellant could not safely be released pending a hearing, hospital officials could have properly proceeded under these applicable provisions, and *then,* if they determined appellant required treatment beyond the twenty day period, filed a petition for a ninety-day commitment under § 304(b).[8]

As this court has stated,

Not only is the Act very specifically drawn, but it has been held that it must be construed very strictly by the courts. As the Federal District Court stated in *Eubanks v. Clarke,* 434 F.Supp. 1022, 1028 (E.D.Pa.1977) ". . . [T]he very nature of civil commitment entails an extraordinary deprivation of liberty . . . A statute sanctioning such a drastic curtailment of the rights of citizens must be narrowly, even grudgingly construed, in order to avoid deprivation of liberty without due process of law."

*In Re S.C.,* 280 Pa.Superior Ct. 539, 546, 421 A.2d 853, 857 (1980); *see also, Commonwealth v. Blaker,* 293 Pa.Superior Ct. 391, 446 A.2d 976 (1981).

 The structure of the Act evidences a legislative intent to create a treatment scheme under which the patient's procedural protections expand progressively as the deprivation of his liberty gradually increases. *In Re Ann S.,* 279 Pa.Superior Ct. 618, 421 A.2d 370 (1980). Where a 90 day commitment is sought for an individual not already

---

**7.** 50 P.S. § 7303.

**8.** Appellee argues that appellant would have been adversely affected had they proceeded under § 302, because such a course of action would have necessitated moving appellant to a different facility, interrupting his treatment. Even if we assume that such concern for appellant's welfare would justify abridging his rights under the Act, we find nothing in the Act requiring that an individual detained under § 206(a) be moved to a different facility for treatment under § 302.

subject to involuntary treatment under §§ 303, 304 or 305, service of the petition is the first official notice he will have that such a course of action is contemplated. The three day period after service of the petition was apparently deemed necessary by the legislature, in order that an individual in this situation may meaningfully avail himself of his rights under the Act, including the assistance of counsel and of a mental health expert.[9]

Although Pennsylvania Courts have not fully delineated the nature of process that is due with respect to civil commitment, there is no question that the substantial deprivation of individual liberty inherent in such commitments may only be accomplished in accordance with due process standards. *Appeal of Niccoli*, 472 Pa. 389, 372 A.2d 749 (1977); *Commonwealth v. McQuaid*, 464 Pa. 499, 347 A.2d 465 (1975). Where, as here, the Act has provided for specific procedural protections, and the procedures mandated are not followed, involuntary commitment is improper. Accordingly, and particularly in light of statutory procedures properly available to the hospital in such a situation, the order of the court below must be reversed.

Appellant, in addition to urging reversal, requests that the order of commitment be expunged and suppressed, and that all court and hospital records documenting the

---

**9.** Appellee maintains that at the time appellant informed hospital authorities that he intended to withdraw from treatment, they told him that they would petition the court for involuntary treatment, that a lawyer would be appointed, and that he had an opportunity to call this lawyer. Thus it is argued that appellant had 72 hours of "constructive notice", so that the full three day period after service was not necessary.

Such "constructive notice" is simply not comparable to the receipt of a petition which "set[s] forth facts constituting reasonable grounds to believe that the person is within the criteria for court-ordered treatment . . ." and states "the name of any examining physician and the substance of his opinion regarding the mental condition of the person." 50 P.S. § 7304(c)(2). In any event, the Act clearly requires the service of the petition, followed by a three day period before hearing, rather than any informal "constructive notice."

commitment be destroyed. In *Wolfe v. Beal*, 477 Pa. 477, 384 A.2d 1187 (1978), our Supreme Court held that a person who has been unlawfully committed to a state mental hospital has a right to the destruction of the hospital records which were created as a result of the illegal commitment. In *Wolfe*, the question of expungement of court records was not at issue, because the lower court's decision to order such relief had not been challenged. We have held, however, that it is clear that the court's reasoning is equally applicable to the expungement of court records. As the Court observed in *Wolfe*,

> The Pennsylvania Constitution specifically provides that "all men ... have certain inherent and indefeasible rights, among which ... [is] acquiring, possessing, and protecting reputation ..." Const. Art. 1, § 1. We cannot ignore the fact that many people in our society view mental illness with distain and apprehension. We ... approved of the concept of protecting the reputation of a person who was unlawfully thrust into the criminal process by sanctioning the expungement of his criminal record. We should not do less for appellant. The continued existence of the hospital records pose a threat to appellant's reputation.

*Wolfe v. Beal*, 477 Pa. at 480, 384 A.2d at 1189; *Commonwealth v. J.T.*, 279 Pa.Superior Ct. 127, 129, 420 A.2d 1064, 1065 (1980).

We reverse, and in accordance with the holding in *Wolfe v. Beal, supra*, order expungement of all hospital and court records of appellant's January 4, 1980 order of commitment.