462 A.2d 718

**In re Troy McMULLINS.**

**Appeal of Troy McMULLINS.**

Superior Court of Pennsylvania.

Argued Feb. 1, 1983.

Filed June 17, 1983.

John J. Thomas, Assistant Public Defender, Wilkes-Barre, for appellant.

Ralph J. Johnston, City Solicitor, Wilkes-Barre, for participating party.

Before WIEAND, McEWEN and MONTGOMERY, JJ.

WIEAND, Judge:

The issue in this appeal is one of first impression. Does section 406 of the Mental Health Procedures Act,[1] which authorizes a court to order involuntary treatment "following an examination in aid of sentencing," have application to juveniles who have been adjudicated delinquent? The Juvenile Court of Luzerne County held that it did and ordered that Troy McMullins, age 17, be committed "for inpatient psychiatric treatment to the forensic adolescent unit at Norristown State Hospital for a period not to exceed ninety (90) days." The juvenile appealed. We affirm.

The present appeal is not moot. This is because an order providing for an involuntary commitment affects an important liberty interest and because most involuntary commitment orders expire before appellate review is possible. *Commonwealth v. Blaker*, 293 Pa.Super. 391, 393 n. 1, 446 A.2d 976, 977 n. 1 (1981); *In re S.C.*, 280 Pa.Super. 539, 542–543, 421 A.2d 853, 854–855 (1980); *In re Commitment*

1. 50 P.S. § 7406.

*of Ann S.,* 279 Pa.Super. 618, 621 n. 2, 421 A.2d 370, 372 n. 2 (1980).

Troy McMullins was found guilty of acts constituting the crimes of simple assault, indecent assault and making terroristic threats and was adjudicated delinquent. On February 18, 1982, he was sent to the diagnostic center for juveniles at Loysville to undergo psychiatric evaluation to aid the court in making final disposition. Based on a staff report from Loysville, the Juvenile Probation Officer filed a petition requesting that the juvenile be committed for 90 days pursuant to section 406 of the Mental Health Procedures Act. The petition was referred to a Mental Health Review Officer who, following an evidentiary hearing, found that McMullins was "severely mentally disabled and in need of inpatient psychiatric treatment." She recommended that the petition be granted; and on May 12, 1982, the court entered the order from which the instant appeal has been filed.

■ The Juvenile Act of July 9, 1976, P.L. 586, 42 Pa.C.S. § 6301 et seq. provides:

"If, at a dispositional hearing of a child found to be a delinquent or at any hearing, the evidence indicates that the child may be subject to commitment or detention under the provisions of the act of October 20, 1966 (3rd Sp.Sess., P.L. 96, No. 6), known as the 'Mental Health and Mental Retardation Act of 1966,' or the act of July 9, 1976 (P.L. 817, No. 143), known as the 'Mental Health Procedures Act,' the court shall proceed under the provisions of the appropriate statute."

42 Pa.C.S. § 6356. However, a juvenile delinquent is not per se mentally ill. The presence of mental illness cannot be inferred solely from the fact that the person acted in a manner displaying delinquency. *Commonwealth v. Hubert,* 494 Pa. 148, 152, 430 A.2d 1160, 1162 (1981).

Section 401(c) of the Mental Health Procedures Act provides:

"(c) As to any person who is subject to a petition or who has been committed under the Juvenile Act, the civil provisions of this act applicable to children of his age shall apply to all proceedings for his examination and treatment. . . ."

Thus far, the Act seems clear. The difficulty arises because, with respect to court ordered involuntary examination and treatment under the Act, no distinction is made between adults and children. One searches in vain through the sections of the Act for provisions pertaining to age distinctions regarding persons who require involuntary examination or treatment.

With respect to voluntary treatment, the Act distinguishes between persons 14 years of age or over and persons under 14. Thus, a person who is 14 years of age or over may submit himself to voluntary examination or treatment. A person under 14, however, can be subjected to examination and treatment only by a parent, guardian or person standing in loco parentis. 50 P.S. § 7201.[2] See also: 50 P.S. § 7204. We shall return to this age distinction at a later point in this opinion.

Section 405 of the Mental Health Procedures Act provides that a court may order an examination for mental illness to aid it whenever "a person who has been criminally charged is to be sentenced." Specifically, it provides as follows:

"Whenever a person who has been criminally charged is to be sentenced, the court may defer sentence and order him to be examined for mental illness to aid it in the determination of [sic] disposition. . . ."

Section 406 provides further:

"Upon a finding of incompetency to stand trial under section 403 after an acquittal by reason of lack of responsibility under section 404, or *following an examination in aid of sentencing under section 405* the attorney for the Commonwealth, on his own or acting at the direction

---

**2.** A juvenile court stands in loco parentis and can subject a child under 14 to observation and treatment under this section. See: *In Interest of Green,* 273 Pa.Super. 397, 417 A.2d 708 (1980).

of the court, the defendant, his counsel, the county administrator, or any other interested party *may petition the same court for an order directing involuntary treatment under section 304.*" (emphasis added).

Did the legislature intend that sections 405 and 406 should have application to proceedings in the Juvenile Courts? Appellant argues that it did not. A juvenile who has been adjudicated delinquent, he contends, has not been "criminally charged" and cannot be "sentenced." On the other hand, it is argued, sections 405 and 406 are the only provisions of the statute which suggest even remotely a procedure which can be followed to obtain treatment for a juvenile delinquent who is severely mentally disabled.

Section 406 permits a court having jurisdiction to enter an order "directing involuntary treatment under section 304." The latter section does not distinguish between adults and juveniles. It establishes both conditions and procedure by which "a person who is severely mentally disabled and in need of treatment" can be subjected to court-ordered involuntary treatment. It can be used in cases of adults and juveniles, whether or not there are pending criminal or delinquency proceedings. Involuntary examination and treatment can be court ordered only where the person to be examined or treated is severely mentally disabled. This condition exists "when, as a result of mental illness, his capacity to exercise self-control, judgment and discretion . . . is so lessened that he poses a clear and present danger of harm to others or to himself." 50 P.S. § 7301(a). Clear and present danger is defined in section 301(b)(1)[3] as follows:

"(b) **Determination of Clear and Present Danger.**—(1) Clear and present danger to others shall be shown by establishing that within the past 30 days the person has inflicted or attempted to inflict serious bodily harm on another and that there is a reasonable probability that such conduct will be repeated. If, however, the person has been found incompetent to be tried or has been

3. 50 P.S. § 7301(b)(1).

acquitted by reason of lack of criminal responsibility on charges arising from conduct involving infliction of or attempt to inflict substantial bodily harm on another, such 30-day limitation shall not apply so long as an application for examination and treatment is filed within 30 days after the date of such determination or verdict. In such case, a clear and present danger to others may be shown by establishing that the conduct charged in the criminal proceeding did occur, and that there is a reasonable probability that such conduct will be repeated. For the purpose of this section, a clear and present danger of harm to others may be demonstrated by proof that the person has made threats of harm and has committed acts in furtherance of the threat to commit harm."

This subsection, as do sections 405 and 406, uses language such as "criminal proceeding" which, according to appellant, suggests application only to adult criminal proceedings. The requirement that a clear and present danger to others be shown by conduct within 30 days has been eliminated where a person has been found incompetent to be tried and where he has been acquitted by reason of lack of criminal responsibility.

The 30 day requirement, it will be observed, has not been excused by this section in cases where involuntary treatment is determined to be necessary "following an examination in aid of sentencing under section 405." This apparent oversight can be explained only if the legislature contemplated that involuntary treatment as a part of sentencing or disposition be covered fully by section 405. This section, it will be recalled, authorizes an examination for mental illness prior to sentencing or other disposition.

■ If appellant's arguments are correct, the Mental Health Procedures Act has failed to provide for involuntary examination or treatment of a juvenile who has been adjudged delinquent, unless by chance he has inflicted or attempted to inflict serious bodily harm on another within thirty days of the dispositional hearing. In most cases, this means that unless a new, second offense has been commit-

ted, a delinquent cannot be ordered to receive necessary treatment involuntarily, and the only dispositions available to the court are release or confinement. Such a result is absurd. Not only is it contrary to the provisions of the Juvenile Law which direct that a juvenile court in appropriate cases shall proceed under the Mental Health Procedures Act but it flies in the teeth of the policy and purpose of the Mental Health Procedures Act itself. The legislative purpose, when it enacted the Mental Health Procedures Act, was "to assure the availability of adequate treatment to persons who are mentally ill" and "to make voluntary and involuntary treatment available where the need is great and its absence could result in serious harm to the mentally ill person or to others." 50 P.S. § 7102. In addition, section 103 states that the Act "establishes rights and procedures for *all* involuntary treatment of mentally ill persons . . . and for *all* voluntary inpatient treatment of mentally ill persons." This is all inclusive. It does not establish rights and procedures for all persons except juveniles who have been adjudicated delinquent.

▬ We conclude, therefore, that in enacting the Mental Health Procedures Act the legislature intended that all rights granted to adults be accorded also to juveniles who are fourteen years of age, their parent, guardian or other person in loco parentis must act for them. Whether a person fourteen or older be certified to and convicted in adult court or adjudicated delinquent in juvenile proceedings, the court may order a mental examination of such person to aid in final disposition. To show that such a person is severely mentally disabled because he poses a clear and present danger to others, it is enough that the offense resulting in the adjudication of delinquency involved proof that the person made threats of harm and committed acts in furtherance of the threat to commit harm, and that such conduct is likely to reoccur without treatment. It is not necessary to such a showing that the conduct occur within thirty days of disposition or sentencing. To hold otherwise—to hold that sections 405 and 406 have no signif-

icance apart from section 304—would be to render them surplusage. An order for involuntary treatment could then be entered only as permitted by section 304, and sections 405 and 406 would be rendered meaningless. This is contrary to the teaching of the Statutory Construction Act which, at 1 Pa.C.S. § 1921(a) instructs that a statute must be construed, if possible, to give effect to all its provisions. See also: *Colautti v. Franklin,* 439 U.S. 379, 392, 99 S.Ct. 675, 684, 58 L.Ed.2d 596, 607 (1979); *Matter of Employees of Student Services, Inc.,* 495 Pa. 42, 52, 432 A.2d 189, 195 (1981); *In Interest of Jones,* 286 Pa.Super. 574, 586, 429 A.2d 671, 677 (1981); *Lukus v. Westinghouse Electric Corp.,* 276 Pa.Super. 232, 262–263, 419 A.2d 431, 447 (1980). In construing section 406, we must view it with reference to the entire statute of which it is but a part.

The hearing court accepted the Mental Health Review Officer's recommended finding that the juvenile was severely mentally disabled and in need of inpatient psychiatric treatment. The juvenile had a history of assaultiveness which, psychiatric testimony predicted, would reoccur without treatment. He was suffering from severe emotional disturbance symptomized by a symbiotic attachment to his mother, assaultiveness toward other women, as well as further thought and feeling disorders.

It is not the function of this Court to find facts but only to determine whether there is evidence in the record to support the hearing court's findings. *Commonwealth ex rel. Gibson v. DiGiacinto,* 497 Pa. 66, 70, 439 A.2d 105, 107 (1981). Our review of the record discloses sufficient evidence to support the court's order. Indeed, except for a contention that the assaultive behavior did not occur within thirty days of disposition, appellant does not contend otherwise.

Order affirmed.

MONTGOMERY, J., files a dissenting opinion.

MONTGOMERY, Judge, dissenting:

I must respectfully dissent. The issue, as I view it, is whether the requirement of § 301(b)(1) of the Mental Health Procedures Act, 50 P.S. § 7301(b)(1) that clear and present danger to others must be established by conduct which occurred within the previous 30 days is excused in cases where involuntary treatment is determined to be necessary "following an examination in aid of sentencing under section 405." 50 P.S. § 7406.

The facts of the instant case are not in dispute. Appellant was adjudicated delinquent on February 18, 1982, upon allegations that he committed terroristic threats, simple assault and indecent assault. Thereafter, he was sent to a juvenile diagnostic center at Loysville for an evaluation in aid of disposition.[1] Based on that evaluation, a petition for commitment under MHPA was filed, on the basis that appellant, as a result of mental illness, posed a clear and present danger of harm to others.[2] 50 P.S. § 7301.

The evidence presented at the commitment hearing consisted of the probation officer's testimony that appellant had been adjudicated delinquent of the above charges and of the evaluating psychiatrist's testimony of appellant's mental condition. This hearing took place on May 10, 1982, considerably more than 30 days after the occurrences which formed the basis of the juvenile court's adjudication.

1. This placement was ostensibly made pursuant to § 405 of the MHPA, 50 P.S. § 7405, which permits a court to order an examination for mental illness · whenever "a person who has been criminally charged is to be sentenced." Appellant has also argued that this section does not apply to juveniles because the language used refers to "criminal" proceedings which does not include an adjudication of delinquency under the Juvenile Act. See, 42 Pa.C.S.A. § 6301. However, under the analysis set forth in this opinion, it is unnecessary to reach this issue.

2. There was no evidence that appellant posed a clear and present danger of harm to himself, an alternate basis for involuntary treatment under 50 P.S. § 7301.

The relevant portions of the MHPA are sections 405 [3], 406 [4] and 301 [5]. Section 405 permits a court to order an examination of a person who has been criminally charged to aid the court in its disposition. Section 406 provides that, following such an examination, a petition may be filed "for an order directing involuntary treatment under 304." Section 304 [6] requires a finding of clear and present danger as defined in section 301(b)(1) [7], which is as follows:

> (b) Determination of Clear and Present Danger.—(1) Clear and present danger to others shall be shown by establishing that within the past 30 days the person has inflicted or attempted to inflict serious bodily harm on another and that there is a reasonable probability that such conduct will be repeated. If, however, the person has been found incompetent to be tried or has been acquitted by reason of lack of criminal responsibility on charges arising from conduct involving infliction of or attempt to inflict substantial bodily harm on another, such 30-day limitation shall not apply so long as an application for examination and treatment is filed within 30 days after the date of such determination or verdict. In such case, a clear and present danger to others may be shown by establishing that the conduct charged in the criminal proceeding did occur, and that there is a reasonable probability that such conduct will be repeated.

In interpreting the MHPA, it is important to keep in mind the circumstances that surround its enactment. The previous civil commitment statute, Section 406 of the Mental Health and Mental Retardation Act of 1966, had been attacked as unconstitutional in a suit filed in U.S. District Court in July of 1975. On July 8, 1976, a three-judge court for the Middle District of Pennsylvania agreed and enjoined the operation of section 406. *Goldy v. Beal*, 429 F.Supp. 640 (M.D.Pa.1976). The following day, the MHPA was

3. 50 P.S. § 7405.
4. 50 P.S. § 7406.
5. 50 P.S. § 7301.
6. 50 P.S. § 7304.
7. 50 P.S. § 7301(b)(1).

signed into law having been under consideration by the Legislature at least since September of 1975. The basis of the *Goldy* decision was that the 1966 Act was so vague as to leave too much discretion to the persons implementing it. To some extent, then, the 1976 MHPA was designed to establish more precise standards for civil commitment which would withstand the type of constitutional attack that invalidated the 1966 Act. We must also bear in mind that a diagnosis of mental illness is a subjective one, often being based only on "observed behavioral deviations from the social 'norm'" with the possibility of different diagnoses from different psychiatrists. Note, *Standards for Involuntary Civil Commitment in Pennsylvania,* 38 U.Pitt.L. Rev. 535, 538–9 (1977). In addition, we must constantly remain aware of the "substantial deprivation of individual liberty inherent in such commitments...." *Commonwealth v. C.B.,* 307 Pa.Super. 176, 452 A.2d 1372 (1982). In recognition of these factors, our Supreme Court has required that the "strict conditions [of the MHPA] be satisfied before a court order for commitment shall be issued," *Commonwealth v. Hubert,* 494 Pa. 148, 430 A.2d 1160 (1981), even though this may occasionally result in the release of persons who may be mentally ill. *Id. See, also,* Note, *Standards, supra* at 546 ("... we appear to be on the verge of ignoring the ancient maxim of the criminal law that it is better that ten guilty men go free than that one innocent man be imprisoned.")

With these principles in mind, then, we look to the requirements of section 301(b)(1). With two, and only two exceptions,[8] a person may not be involuntarily committed to a mental hospital unless clear and present danger to others is shown by conduct which has occurred within the previous 30 days. Appellant does not fit into either exception because, as the majority correctly notes, the 30-day requirement is not excused by this section in cases where treatment is deemed necessary following an examination under

8. As noted above, these are: (1) if the person has been found incompetent to be tried or (2) if the person has been acquitted by reason of lack of criminal responsibility. 50 P.S. § 7301(b)(1).

section 405. I disagree with the majority's statement that we can view such a significant omission as an "apparent oversight." I believe that to be inconsistent with the long line of cases requiring strict adherence to the statutory scheme of the MHPA. *See, Commonwealth v. C.B.*, 307 Pa.Super. 176, 452 A.2d 1372 (1982) (reversed because appellant was served one day prior to the hearing rather than three days as required by the act); *In re Condry*, 304 Pa.Super. 131, 450 A.2d 136 (1982) (reversed because certification did not include the required description of treatment); *Commonwealth v. Blaker*, 293 Pa.Super. 391, 446 A.2d 976 (1981) (evidence insufficient to show clear and present danger); *In re S.C.*, 280 Pa.Super. 539, 421 A.2d 853 (1980) (evidence insufficient to meet the stringent standards of the Act); *In re Ann S.*, 279 Pa.Super. 618, 421 A.2d 370 (1980) (reversed because appellant's emergency commitment under § 302 was extended for 90 days under § 304 rather than for 20 days under § 303). Since neither of the two exceptions of § 301(b)(1) apply to appellant and there was no evidence that appellant had inflicted or attempted to inflict serious bodily harm to another within the 30 days prior to the commitment hearing, I would reverse the order of commitment.

The majority's concern that this interpretation means there is no way for a court to order involuntary treatment for a person in appellant's position is an illusory one. There is no reason why a petition for involuntary commitment could not have been filed within the time limits of § 301(b)(1) whether a delinquency petition were pending or not. Scores of people have been committed for involuntary treatment on the basis of conduct for which no criminal or juvenile proceedings were ever instituted. The need for and desirability of such treatment should have been even more apparent in appellant's case since he was well-known to the juvenile court system at the time the delinquent acts took place. At any rate, a pragmatic approach to the MHPA has already been rejected by this court in *Commonwealth v. Blaker*, *supra*, in which we said,

It is not enough to find, as the lower court did, that appellant "was truly in need of the services offered by [the] mental health system." Slip op. at 6. Unless one or more of the requirements of section 301, 50 P.S. § 7301, is met, involuntary commitment is not lawful.

*Id.* 293 Pa.Super. at 398, 446 A.2d at 982.

I would, therefore, reverse the order of commitment.