**In re: T.T.**

**Appeal of: T.T.**

Superior Court of Pennsylvania.

Submitted Feb. 28, 2005.
Filed May 19, 2005.

---

David R. Crowley, Bellefonte, for appellant.

Daniel McGee, State College, for Centre County.

Before: JOYCE, MUSMANNO and BECK, JJ.

OPINION BY BECK, J.:

¶ 1 Appellant T.T. seeks review of a trial court order committing him to involuntary psychiatric treatment under the Mental

Health Procedures Act.[1] The primary issue is whether an on-going and worsening serious physical debilitation can satisfy the statutory requirement under section 301(b) that appellant poses a clear and present danger of harm to himself. We find that it can and thus affirm.

¶ 2 Appellant has been followed by the psychiatric staff of the State Correctional Institution at Rockview since his transfer to that institution in July, 2004. Dr. Kevin Burke, a Rockview psychiatrist, diagnosed appellant as suffering from paranoid delusional disorder and prescribed medication for this condition. Appellant has consistently refused to take the medication. He has also complained with regularity that he is subject to electric shocks delivered through specific areas in his cell by the psychiatric staff. No shock therapy was ever prescribed or administered.

¶ 3 On September 28, 2004, appellant's condition reached an acute stage, and he sought medical assistance for chest pain and for his continued perception of electric shocks. According to Dr. John Symons, appellant's primary physician, during this episode, appellant was "anxious, tearful and actually very much afraid" and described an eyeball-like device with the capacity of reaching him wherever he went. N.T., 10/05/04, at 26. A cardiac evaluation revealed no evidence of any cardiac problem.

¶ 4 Appellant is non-ambulatory; *i.e.,* he does not walk, but rather crawls around his cell or is provided a wheelchair for greater distances. Physical evaluation by the Rockview medical staff, including an orthopedic consultant, revealed an old injury and mild to moderate arthritis in his right knee. However, these observations were not consistent with a physiological inability to walk. The medical team developed a treatment plan that began with simple strengthening exercises, but appellant failed to comply with the plan. His failure to walk for at least two years has resulted in limb atrophy, apparent to the naked eye. Dr. Symons opined, with a reasonable degree of medical certainty, that if appellant continued not to use his legs, he would become permanently disabled. N.T., 10/05/04, at 30.

¶ 5 Although the medical findings provided no physiological explanation for appellant's failure to walk, appellant contended that he was physically unable to walk. He expressed his preference for a walker, a brace and a knee replacement. The medical team believed that a brace would be counterproductive because it would immobilize the knee without strengthening it, leading to further problems. The medical team did not rule out use of a walker, but wanted first to strengthen the knee with exercises, to decrease the likelihood of further injury from use of the walker.

¶ 6 Dr. Burke, Dr. Symons, and Dr. Walmer (the chief psychologist at Rockview) all opined that appellant's psychiatric problems are interfering with his treatment for his inambulatory condition. Appellant's belief that his physicians are at least partially responsible for the electric shocks he perceives has created an atmosphere of distrust. The medical and psychiatric personnel further opined that appellant's distrust of their efforts prevents him from participating in much needed therapies.

¶ 7 On October 1, 2004, the Correctional Institution at Rockview filed a petition seeking involuntary psychiatric treatment for appellant under section 304 of the Mental Health Procedures Act. 50 P.S. § 7304. This provision provides for court-ordered involuntary treatment, not to exceed nine-

---

**1.** 50 P.S. §§ 7101—7503.

ty days, of a person who is severely mentally disabled and in need of treatment.

¶ 8 A hearing was held before a mental health review officer on October 5, 2004. The hearing officer granted the petition, but remarked that this was a close case. A court order of October 6, 2004 directed transfer of appellant to a mental health facility for a period not to exceed ninety days. After appellant's motion for post-trial relief was denied, he filed this appeal.

 ¶ 9 Appellant presents only one issue on appeal. He alleges that he was illegally committed because insufficient evidence was offered to establish a reasonable probability of death, serious bodily injury or serious physical debilitation within the next thirty days, as required under section 301(b)(2)(i) of the Mental Health Procedures Act. 50 P.S. § 7301(b)(2)(i).

 ¶ 10 In reviewing a trial court order for involuntary commitment, we must determine whether there is evidence in the record to justify the court's findings. *Commonwealth ex rel. Gibson v. DiGiacinto,* 497 Pa. 66, 70, 439 A.2d 105, 107 (1981). Although we must accept the trial court's findings of fact that have support in the record, we are not bound by its legal conclusions from those facts. *Id.*

¶ 11 The issue before us involves several provisions of the Mental Health Procedures Act. By authority granted in section 304, the court may order involuntary treatment, not to exceed ninety days, of a person who is "severely mentally disabled and in need of treatment." 50 P.S. § 7304(a). The requirements for a finding of "severely mentally disabled" are presented in section 301.

A person is severely mentally disabled when, as a result of mental illness, his capacity to exercise self-control, judgment and discretion in the conduct of his affairs and social relations or to care for

his own personal needs is so lessened that he poses a clear and present danger of harm to others or to himself.

50 P.S. § 7301(a).

To establish that a person is a "clear and present danger" to himself, it must be shown that, within the past thirty days, the person has attempted or threatened suicide, 50 P.S. § 7301(b)(2)(ii); the person has mutilated or threatened or attempted to mutilate himself, 50 P.S. § 7301(b)(2)(iii); or

the person has acted in such manner as to evidence that he would be unable, without care, supervision and the continued assistance of others, to satisfy his need for nourishment, personal or medical care, shelter, or self-protection and safety, and that there is a reasonable probability that death, serious bodily injury or serious physical debilitation would ensue within 30 days unless adequate treatment were afforded under this act.

50 P.S. § 7301(b)(2)(i).

 ¶ 12 Recognizing the substantial curtailment of liberty inherent to an involuntary commitment, our Supreme Court has cautioned that the courts must strictly interpret and adhere to the statutory requirements for commitment. *Commonwealth v. Hubert,* 494 Pa. 148, 153, 430 A.2d 1160, 1162–63 (1981). In interpreting section 301(b)(2)(i), this Court has held that a mere finding of senility is insufficient to establish that a person is a "clear and present danger" to himself. *See In re Remley,* 324 Pa.Super. 163, 471 A.2d 514 (1984). Without evidence that the individual would die or suffer serious bodily injury or serious physical debilitation in the immediate future unless he was committed, the statutory requirement had not been met. *Id.* at 517. Similarly, for involuntary commitment, it is not sufficient to find only that the person is in need of

mental health services. *Commonwealth v. Blaker*, 293 Pa.Super. 391, 446 A.2d 976, 980 (1981). The court must also establish that there is a reasonable probability of death, serious injury or serious physical debilitation to order commitment. *Id.* at 979.

■ ¶ 13 The high standard for involuntary commitment is not relaxed when applied to an incarcerated individual. *See Hubert, supra* at 153, 430 A.2d at 1162–63. In *Gibson, supra* at 70–71, 439 A.2d at 107, our Supreme Court reversed an order for involuntary commitment of a prisoner, finding insufficient evidence that he posed a clear and present danger to himself or others. A psychiatrist had testified that the inmate was schizophrenic with paranoid delusions and opined that he posed a clear and present danger to himself and others. *Id.* at 68, 439 A.2d at 106. Testimony was also heard that the inmate had been found extinguishing a burning newspaper in his cell, did not regularly take the psychoactive drug prescribed for him, and had a twisted coathanger in his cell. *Id.* at 68–69, 439 A.2d at 106. In spite of this testimony, the Court found involuntary commitment improper, citing no evidence of attempted suicide or self-mutilation; no evidence that the newspaper fire was deliberately set; no evidence that the failure to take medication threatened the inmate's life or well-being; and no evidence that the twisted coathanger was used to threaten or injure anyone. *Id.* at 70–71, 439 A.2d at 107. On this record, the Court found that the Commonwealth had not shown "such inability of [the inmate] to attend to his needs as to threaten death, serious bodily injury, or serious physical debilitation." *Id.* at 71, 439 A.2d at 107.

¶ 14 In the present case, appellant argues that prison officials did not show that he was a clear and present danger to himself or others. The evidence was un-controverted that appellant had not attempted self-mutilation or suicide, nor was he physically hostile or violent to others. Therefore, the only basis for involuntary commitment was a showing that appellant was unable to care for himself and that there was a reasonable probability of his death, serious bodily injury or serious physical debilitation within thirty days unless commitment was ordered. 50 P.S. § 7301(b)(2)(i).

¶ 15 Appellant contends that there was insufficient evidence to establish a reasonable probability of his death, serious bodily injury, or serious physical debilitation within thirty days. His physician testified that at some point, if he did not begin to exercise his legs, he would be permanently disabled and unable to regain use of his legs—a condition that appellant acknowledges is a serious physical debilitation. However, appellant focuses on the fact that no evidence was presented that the permanent disability would ensue *within thirty days*. Appellant's physician testified that he could not determine with any medical certainty the specific time when permanent damage would ensue if appellant persisted in his refusal of therapy; the physician could only testify to a reasonable degree of medical certainty that appellant would suffer permanent disability at some future time. Thus, appellant argues, the prison officials did not carry their burden of showing that he would likely suffer serious physical debilitation within thirty days.

¶ 16 By appellant's argument, statutory "serious physical debilitation" is restricted to mean *permanent* debilitation. We find this reading of the statute inaccurate. The state of debilitation is defined as feebleness or languidness or weakness. Funk & Wagnalls New Comprehensive International Dictionary, Publishers International Press, Newark, N.J., 1982. Nothing in the

definition of debilitation even remotely implies that the state must be permanent. Appellant has not used his legs to walk for two years, but rather crawls in his cell. We have no hesitation in describing his present condition as one of "serious physical debilitation." We see no need to wait until his condition has progressed to the point that he is permanently unable to walk to apply this terminology. The evidence is clear that the debilitation will continue to escalate over the next thirty days, given the testimony of his physician that "[e]very day that he doesn't do his knee exercises and every day that he doesn't walk things get worse" until at some point he is likely to be permanently disabled. N.T., 10/04/04, at 29.

¶ 17 We next must address whether these circumstances satisfy the statutory requirement to show that "serious physical debilitation would ensue within 30 days" if commitment is not ordered. 50 P.S. § 7301(b)(2)(i). In this case what will ensue within thirty days is a worsening—not an onset—of serious physical debilitation. We do not believe that this distinction necessitates a finding of failure to satisfy the statutory requirement. Nor do we believe that the court must ignore evidence of the worsening of an existing serious physical debilitation, even under a strict reading of the statute. Rather, when evidence is presented that a serious physical debilitation is already present and will become even more serious in the next thirty days in the absence of commitment, we believe that the statutory requirement has been satisfied.

¶ 18 Given the findings of fact in this case, we hold that the statutory requirement to show that "serious physical debilitation would ensue within 30 days" has been satisfied. 50 P.S. § 7301(b)(2)(i). Appellant has not walked for at least two years, but crawls in his cell. Medical and orthopedic evaluation has revealed no physiological explanation for appellant's failure to walk. Uncontradicted testimony established that appellant's serious physical debilitation becomes more serious with each passing day, and at some indeterminable point in the future is likely to progress to permanent disability unless he cooperates with physical therapy. Further uncontradicted testimony established that appellant is severely mentally disabled and that this disability prevents him from participating in therapy to address his ongoing physical debilitation. Presented with these facts, we find that the trial court did not err in determining that the statutory requirements for involuntary commitment had been met.

¶ 19 Order affirmed.