J. S40011/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE:  E.G. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| APPEAL OF:  E.G., | : | |
| | : | No. 1255 WDA 2014 |
| Appellant | : | |

Appeal from the Order Dated July 2, 2014,
in the Court of Common Pleas of Allegheny County
Orphans' Court Division at No. 1022 of 2014

BEFORE:  FORD ELLIOTT, P.J.E., DONOHUE AND STRASSBURGER,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED OCTOBER 15, 2015**

E.G.[1] appeals from the final order of the trial court that denied his petition for review of a commitment order entered pursuant to Section 303 of the Mental Health Procedures Act ("MHPA"), 50 P.S. § 7303, extending his confinement to a mental health facility for an additional 20 days.  We affirm.

The facts underlying appellant's involuntary commitment have been summarized by the trial court as follows:

> On June 22, 2014, the Appellant, [E.G.], was admitted to Western Psychiatric Institute and Clinic (WPIC) pursuant to the provisions of 50 P.S. § 7302. According to the Application for Involuntary Emergency Examination and Treatment it was reported, *inter alia*, that the Appellant continually talked to his neighbor about a "Pittsburgh chainsaw massacre".   The Appellant then purchased a

---

* Retired Senior Judge assigned to the Superior Court.

[1] Mindful of the sensitive nature of the case, we have amended the case caption to utilize only the initials of the appellant.

chainsaw and told the neighbor that he needed to get a sharper blade for it. The Appellant also, according to the neighbor, loves fires and would "make large pillars of flames."

On June 23, 2014, during a medical examination at WPIC the Appellant admitted to purchasing a chainsaw and making statements about using it. He denied any thoughts of harming himself or others. As a result of the exam, Dr. Robin E. Valpey, M.D. found that the Appellant was: "hyperverbal with overproductive speech, grandiose and very irritable. Admits to some paranoia in the past and perceiving things others don't perceive, but would not share further."

On June 24, 2014, a hearing was held pursuant to 50 P.S. § 7303 before Mental Health Review Officer (MHRO) Wrenna L. Watson, Esq. The Appellant was present at the hearing and was represented by the Office of the Public Defender. The Allegheny County Solicitor presented the testimony of Dr. Valpey that the Appellant was severely mentally disabled. A neighbor testified concerning the Appellant obtaining and displaying a chainsaw and that the Appellant had 4 tanks of gasoline in his backyard and would often build large fires with flames that reached 10 feet high or more. Furthermore, the neighbor testified that the Appellant's driving was erratic, fast, and dangerous. The neighbor testified that he felt unsafe living next door to the Appellant and had his locks changed. Based on the testimony of the Doctor and the neighbor, the MHRO found that the Appellant continued to be severely mentally disabled and in need of involuntary inpatient and outpatient care for a period not to exceed 20 days.

Trial court opinion, 12/10/14 at 1-2.

J. S40011/15

On June 2, 2014, following a hearing, the trial court upheld the certification of severe mental illness by final order. Appellant raises one issue on appeal:

I.  WAS THE EVIDENCE INSUFFICIENT TO ESTABLISH THAT [APPELLANT] WOULD POSE A CLEAR AND PRESENT DANGER TO HIMSELF OR OTHERS WHERE THE COMMONWEALTH ESTABLISHED ONLY THAT [APPELLANT] SUFFERS FROM A MENTAL ILLNESS AND MADE ANOTHER PERSON UNCOMFORTABLE?

Appellant's brief at 4.

This court reviews determinations pursuant to the MHPA "to determine whether there is evidence in the record to justify the hearing court's findings." *In re T.T.*, 875 A.2d 1123, 1126 (Pa.Super. 2005), citing *Commonwealth ex rel. Gibson v. DiGiacinto*, 439 A.2d 105, 107 (Pa. 1981). Although "we must accept the trial court's findings of fact that have support in the record, we are not bound by its legal conclusions from those facts." *Id.* citing *Gibson*, 439 A.2d at 107.

> The legislature's purpose in enacting the Mental Health Procedures Act was "to assure the availability of adequate treatment to persons who are mentally ill" and "to make voluntary and involuntary treatment available where the need is great and its absence could result in serious harm to the mentally ill person or to others." Mental Health Procedures Act, § 102. *See also In re McMullins*, 315 Pa.Super. 531, 462 A.2d 718, 722 (1983). To achieve these objectives within the constraints of due process "the scheme adopted by the legislature here envisions that more extensive procedural or 'due process' protections will apply as the amount of time a person may be deprived of liberty increases

- 3 -

above a bare minimum." ***Matter of Seegrist***, 517 Pa. 568, 574, 539 A.2d 799, 802 (1988). The resulting progression in sections 302, 303, and 304, evinces the legislature's clear concern that the procedural protections afforded our citizens reflect the extent of the deprivation of liberty at stake. ***In re Hancock***, 719 A.2d 1053, 1057 (Pa.Super.1998).

Section 302, which provides for involuntary emergency examination and treatment, allows confinement of the patient for up to 120 hours upon certification by a physician, or authorization by the county mental health administrator. Mental Health Procedures Act, § 302(a), (d). Though action by the administrator requires issuance of a warrant, "[i]n light of the emergency nature, therapeutic purpose and short duration" of a section 302 commitment, the warrant need not be supported by probable cause and may be based upon hearsay. ***In re J.M.***, 556 Pa. [63,] 75-76 n. 9, 726 A.2d [1041,] 1046-47 n. 9 [(1999)].

Section 303 provides for extended involuntary emergency treatment whenever, following a patient's commitment under section 302, "the facility [where the individual is currently under treatment] determines that the need for emergency treatment is likely to extend beyond 120 hours." Mental Health Procedures Act § 303(a). To ensure that the individual's liberty interest is protected, section 303 subjects the facility's determination to substantial legal scrutiny. Application for continued treatment must be made to the court of common pleas and shall state the grounds on which treatment is to be imposed along with the name of any examining physician and the substance of his opinion regarding the mental condition of the patient. ***Id.*** at § 303(a). Because a patient may be confined under section 303 for as long as twenty days, the legislature has mandated a right to counsel, and the right to an informal hearing, at which counsel may question the examining physician and other witnesses. ***Id.*** at § 303(b), (c). Though the rules of

> evidence need not be applied, the reviewing judge or mental health review officer (MHRO) must confine his consideration to evidence he deems reliable. *Id.* at § 303(c). Moreover, we have held that a patient may not be confined under section 303 on a showing of less than "clear and convincing evidence." *In re Hancock*, *supra* at 1058.

*In re R.D.*, 739 A.2d 548, 555-556 (Pa.Super. 1999), *appeal denied*, 751 A.2d 192 (Pa. 2000).

Instantly, appellant's commitment was extended under Section 303 after an informal commitment hearing.[2] To prove the necessity for emergency involuntary commitment under Section 303, the petitioner must demonstrate by clear and convincing evidence that the person being committed is severely mentally disabled and in need of extended involuntary treatment. *In re S.B.*, 777 A.2d 454 (Pa.Super. 2000).

The MHPA defines a person who is severely mentally disabled in pertinent part as follows:

> **§ 7301. Persons who may be subject to involuntary emergency examination and treatment**
>
> **(a) Persons Subject.--**Whenever a person is severely mentally disabled and in need of immediate treatment, he may be

---

[2] This court notes that although the commitment order in this appeal has since expired, "appeals from involuntary commitment orders which have expired are not moot because involuntary commitment affects an important liberty interest, and because by their nature most involuntary commitment orders expire before appellate review is possible." *In re Condry*, 450 A.2d 136, 137 (Pa.Super. 1982) (citation omitted) (quotation marks omitted); *In re Woodside*, 699 A.2d 1293 (Pa.Super. 1997). Accordingly, appellant's arguments are not moot, and will be considered on their merits.

> made subject to involuntary emergency examination and treatment. A person is severely mentally disabled when, as a result of mental illness, his capacity to exercise self-control, judgment and discretion in the conduct of his affairs and social relations or to care for his own personal needs is so lessened that he poses a clear and present danger of harm to others or to himself.

50 P.S. § 7301.

Pursuant to 50 P.S. § 7301(b), "a clear and present danger of harm to others may be demonstrated by proof that the person has made threats of harm and has committed acts in furtherance of the threat to commit harm."

Instantly, appellant argues the evidence presented at his certification did not establish that he was a clear and present danger to himself or others. Appellant claims that the Commonwealth failed to prove that he committed any acts in furtherance of the threat to commit harm. He contends that there is no indication that he did anything more than cut up sticks in his backyard with a chainsaw. There was no allegation that he attempted to strike his neighbor with the chainsaw or swing it in a threatening manner. Appellant contends that the testimony established only that appellant made one of his neighbors "really uncomfortable" and that merely making another person uncomfortable did not justify his involuntary

commitment. We disagree with appellant's version of the evidence and find that the record amply supports the hearing court's findings.[3]

The Commonwealth called two witnesses, (1) Charlie Hron-Weigle, appellant's neighbor and friend, and (2) Dr. Robin Valpey, appellant's treating physician at WPIC.

Hron-Weigle testified that over the previous 30 days, he had become "increasingly uncomfortable" by appellant. Hron-Weigle testified that appellant was "talking about chainsawing me." (Hearing audio, 6/24/14 at 1:40.) Appellant then obtained a chainsaw and began using it near Hron-Weigle. While holding the chainsaw near Hron-Weigle, appellant repeated the threat, "maybe I should chainsaw Charlie [Hron-Weigle]." (*Id.* at 2:53.) Hron-Weigle also testified that appellant stated that he needed to sharpen the chainsaw blades. Appellant then had the blades sharpened. Hron-Weigle felt so unsafe that he changed the locks on his door, could not sleep until sunrise, and slept with a knife. Hron-Weigle also testified that appellant poured kerosene on a live fire near the apartment building and the flames reached ten feet high (*id.* at 3:10), and that appellant's driving had become erratic, fast, and dangerous. (*Id.* at 4:22.)

---

[3] The audio recording of the June 24, 2014, hearing before the health review officer has been made part of the record. This court has reviewed the recordings. References to the audio recording will be cited using this format: (Hearing audio, 6/24/14 at __:__.)

Dr. Valpey testified that appellant was previously diagnosed with schizophrenia and ADHD. She also stated that he was diagnosed with "Mood Disorder" during his initial commitment. (*Id.* at 9:42.) Dr. Valpey stated that appellant admitted to stopping his medications from a prior hospitalization and was reluctant to take the medications while at the hospital. She testified that appellant drew a picture of blood dripping from the acronym WPIC. (*Id.* at 11:48.) Dr. Valpey expressed her belief that appellant required further inpatient treatment.

In *In re Woodside*, 699 A.2d 1293 (Pa.Super. 1997), a man argued that his initial involuntary commitment was improper because the petition filed by his estranged wife failed to allege a threat and acts in furtherance of the threat. He claimed first that his statement to another, that he "might as well get a scope and a rifle and get rid of the problem, my soon-to-be-ex-wife," did not constitute a threat. *Id.* at 1296. We rejected that argument. The question remaining was whether there was an overt act in furtherance of the threat. We held that the man's purchase of a rifle scope from a sporting goods store on the day of his commitment constituted an overt act in furtherance of the threat.

In *In re R.D.*, 739 A.2d 548 (Pa.Super. 1999), this court held that an elderly woman's act of picking up her cane in an effort to hit another, together with verbal threats of harm, constituted an act in furtherance of the threat to commit harm, as contemplated by the statute.

Here, the record demonstrates that appellant stated to Hron-Weigle, "maybe I should cut up Charlie." The threat to cut someone up with a chainsaw could reasonably be determined to be a threat of harm. Having established the existence of a threat, we must determine under Section 7301(b) whether appellant "committed acts in furtherance of the threat to commit harm." Contrary to appellant's argument, the fact that there was no allegation that appellant attempted to strike Hron-Weigle with the chainsaw or swing it in a threatening manner is of no moment. We agree with the trial court that appellant's subsequent procurement of a chainsaw after the verbal threat constituted an overt act in furtherance of the threat directed at Hron-Weigle. As we noted in **In re Woodside**, "the stakes are simply too high to require, beyond this conduct, a more explicit demonstration of appellant's intention to carry out his threat." **In re Woodside**, 699 A.2d at 1298.

Based on our review of the record, we conclude the trial court properly certified appellant's continued involuntary treatment under Section 7303 based on sufficient evidence of a clear and present danger to others. **See** 50 P.S. § 7301(b). Accordingly, we affirm.

Order affirmed.

J. S40011/15

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/15/2015